## WILLIAM H. MOODY, ET AL. *v.* D. G. THOMAS.

1. Where the defendant's counsel, after the charge of the court was given, and when the jury were about to retire, told the court that he excepted to the charge generally, and was thereupon desired by the court to point out the particulars to which he objected, and was informed, that on so doing, the jury would be reinstructed, but declined to do so, the general exception, under these circumstances, will not be taken notice of on error.

2. The vendor of the stock, fixtures and good-will of a business, there being no express or implied stipulation to that effect, is not required to cease from carrying on the same business in the vicinity, nor bound to recommend customers to the old concern. He must not directly interfere with the customers of his vendee, but is not bound to do anything more.

GENERAL TERM.—Proceeding in error to reverse a judgment of Spencer, J., rendered in favor of the defendant in error at special term of February, A. D. 1856.

The facts are sufficiently stated in the decision.

*Fox & French,* for plaintiffs in error.

*Haines, Todd & Lytle,* for defendant in error.

STORER, J., delivered the opinion of the court.

This case is presented for our consideration upon the facts embodied in a bill of exceptions, and the charge of the court to the jury, at special term. No exception appears to have been taken to the rulings of the judge, at the time they were announced, but on the contrary, we find, at the conclusion of the bill of exceptions, before it was signed and allowed, the following statement: " And thereupon, the jury being about to retire, the defendants' counsel told the court he excepted to the charge generally, given by the court to the jury. The court then desired that such objection might be pointed out, as the jury would be reinstructed, if necessary; but the objection not being specially made, the jury were permitted to retire, and

the court noted, that the defendants had taken a general exception to the charge and then allowed this bill of exceptions."

The plaintiffs in error claim it to be the duty of this court, although no exception was taken to any special charge, to examine and decide upon all the rulings of .the judge at special term. The defendant in error, on the other hand, contends that no charge of the judge, not specially excepted to at the trial, can be subjected to a re-examination.

By section 291 of the code, the party objecting to the decision of the court, must except at the time the decision was made. When the code was adopted, the law, then in force, required that "when a party alleges an exception to any opinion, order, or judgment of the court, it shall be the duty of the judges concurring therein, if required by the party, during the progress of the case, to sign and seal a bill, containing such exception, or exceptions, before the case proceeds; or, if the party consents, the signing and sealing may be suspended until the trial is closed; but it shall be signed and sealed during the term, and made a part of the record." Vol. 43 O. L., 80, §3. A construction was given by the Supreme Court to this section, 19 Ohio, 300, *Geauga Iron Co.* v. *Street;* where it was held, that "when an objection is made to the introduction of testimony, the court must decide whether it be admissible or not. If either party, on hearing the decision, is not satisfied with it, he may except; but if no exception appears on the record, it will be presumed that none was taken. To the charge of the court, or the refusal to charge when requested, the exceptions must appear, or no ground will be shown, by the record, to justify a reversal of the judgment."

This is the exposition of the practice of the Supreme Court of the United States in similar cases. 4 Peters, 80, *Carver* v. *Jackson;* 5 Peters, 196–7, *Ex Parte Crane, et al.* So in New Jersey, 1 Zab. 609, *Oliver* v. *Phelps;* 1 Spencer, 538, *Potts* v. *Clarke.* So in New York, 1 Selden, 422, *Haggart* v. *Morgan;* 3 Selden, 273, *Hunt* v. *Maybee;* 4 Selden, 43,

*Hart* v. *Rennselaer & Sar. Railroad.* So in the Court of Exchequer, 8 Mees. & Wels. 37, *Rutter* v. *Chapman.*

The rule thus indicated would seem to be universally acted on by the courts, and is founded upon obvious principles of convenience as well as justice.

But it is claimed, by the plaintiffs in error, that although it may have been the right of the court to refuse the allowance of the bill of exceptions, embodying the whole charge, upon a general exception, yet the exception was allowed, and the bill made part of the record, and, therefore, it becomes our duty to examine the whole charge. This assumption, we think, is too broad, and can not be sustained, except, perhaps, in a case where the general exception was taken, allowed, and ordered to be placed on the minutes without any qualification, by the court at the time.

In the case before us, when the general exception was taken, the court desired the defendants' counsel to point out the particular charge of which he complained, so that, if improperly given, the jury might be reinstructed; but no exception was taken to any particular ruling, and a formal bill was then allowed to the whole charge.

We have been referred to 23 Vermont Reps. 503, *Buck* v. *Squiers*, to a passage from the opinion of Judge Redfield, in which he gives some color to the proposition, that a general exception, if allowed, will permit the examination of all the errors committed by the court, at the trial; but the entire case would not seem to authorize the assumption, and the principle, decided in 21 Vermont, 100, *Sargeant* v. *Butts*, is opposed to such a construction.

Nor does the case of 2 Zab. 699, *Ward* v. *Ward;* or of 3 Pick. 175, *Buckland* v. *Charlemont*, support the position of the plaintiffs in error. The practice in Massachusetts and New Jersey, as we understand it, is in harmony with those already alluded to.

The action before us was brought on a promissory note. The defense set up is that it was given for the purchase of

the stock and fixtures of a tin, copper, and sheet-iron manufactory. It is averred that the conditions of the sale were not complied with by the vendee. The plaintiff's claim is, therefore, sought to be recouped to the amount of the defendants' damages consequently sustained. The contract of sale stated that "all the chattel property, all the business, fixtures, stock, tools, and machinery of the plaintiff's manufactory, as then was and had been carried on by him, on the south side of East Front street, Cincinnati; it being the true intent and meaning of the parties that the defendants should succeed the plaintiff in the said business, and be entitled to all his rights and privileges therein."

Testimony having been given that the plaintiff, after the sale, had not complied with the above stipulations, the defendants asked the court to charge the jury: "That the contract of sale conveyed to the defendants the good-will of the establishment sold, and if the plaintiff, by his subsequent conduct, rendered that good-will less valuable to the defendants, it would amount to a failure of consideration to that extent." This charge the court declined to give, but told the jury: "That the written contract conveyed all the stock, fixtures, tools, and property therein described, so as to put the defendants precisely in the same situation, with respect thereto, as to the business of the establishment, as the plaintiff himself occupied at the time of the sale, and that it did not convey the good-will in the sense used in this case, that it bound the plaintiff to bring business and customers to the defendants." To which refusal to charge as requested, and for charging as stated, the defendants excepted.

All that could have been claimed by the buyer, under the contract of sale, we suppose, was something equivalent to the good-will of the business in which the plaintiff was engaged. The term itself is not used by the parties, but the language is susceptible of a similar meaning.

If the good-will had been expressly granted, we think the charge, as modified and explained by the court, was as favor-

able to the purchaser as the language of the case would justify.

The true value of the term "good-will" is held by Lord Eldon, in 17 Vesey, 346, *Cruttwell* v. *Lye,* "to be nothing more than that the old customers will resort to the old place;" and even where it is conveyed with the old business, unless there is an express covenant on the part of the vendor, which restrains him from setting up the same business in the same vicinity, he is at liberty to do so without the consent of the vendee. There might be a question of fraud, that would authorize the interference of the Chancellor to restrain the new business; but that must be inferred from some positive act directly interfering with the old business. The exercise of the right of commencing the same business, in the same neighborhood, is no infraction of the agreement of sale. Nor can the purchaser complain, if the seller does not recommend the old customers to the new proprietor. Sufficient is it that the old business is left to his skill and good management, without the direct interposition of the former owner.

In 5 Russel, 29, *Chissum* v. *Dewes,* the Master of the Rolls, Sir John Leach, said : " The good-will of the business is nothing more than the advantage attached to the possession of the house, and whoever is entitled to the possession of the house is entitled to the whole of that advantage." This advantage must depend, as we have intimated, on the peculiar circumstances of each case. Unless there is a clause to restrain the retiring partner from setting up the same business, or some understanding between the parties, upon the basis of which the dissolution was made, there would be a violation if the retiring partner should commence again, in the same vicinity, his former occupation. 2 Maddock, 198, *Harrison* v. *Gardner;* 5 Ves. 555, *Barret* v. *Blagrave;* 14 Ves. 468, *Shackle* v. *Baker;* 2 Ellis & Blackburn, 518, *Turner* v. *Evans.*

There being no stipulation to the contrary between the parties, either express or implied, from their conduct at the

time of sale, the retiring partner was under no legal obligation to cease from business altogether, nor yet to induce or prevail upon the old customers of the establishment to continue to deal at the old place. He ought not, in good faith, directly to interfere with the customers of the business of his vendee, but he is not bound to do anything more.

We affirm the judgment rendered at special term.